IN THE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRYAN RHODE,

    Plaintiff,

v.                                          CASE NO.:

CSX TRANSPORTATION, INC.,

    Defendant.

_____/

# COMPLAINT

COMES NOW Plaintiff, Bryan Rhode, by and through his undersigned attorney, and files this complaint against Defendant, CSX Transportation, Inc., and in support thereof states the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a resident of the State of Florida.

2. Defendant is a Florida corporation headquartered and operating in Duval County, Florida.

3. The actions alleged in this Complaint took place within Duval County, Florida.

4. Jurisdiction of the Court is based upon 29 U.S.C. § 1132, which grants District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan.

5. Defendant's Executive Severance Plan ("Plan") is an employee welfare benefit plan, as defined by the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1001 *et seq.*, which provides benefits to eligible participants, including Plaintiff.

6. Venue is therefore proper in this district pursuant to 29 U.S.C. § 1132, which allows an action to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

## GENERAL ALLEGATIONS

7. At the time of his separation from Defendant, Plaintiff was employed as Defendant's Vice President of the Public Safety, Health, and Environmental Team.

8. As a Vice President, Plaintiff was entitled to receive benefits from Defendant's Executive Severance Plan ("Plan") [Exhibit A] if Defendant terminated him without cause or if Plaintiff voluntarily resigned with good reason, after providing Defendant with written notice and allowing Defendant time to cure.

9. Following the death of Defendant's Chief Executive Officer Hunter Harrison in late 2017, Defendant changed Plaintiff's role in the company. During calendar year 2018, Plaintiff was moved from reporting to the Chief Executive Officer, and instead began reporting to the public affairs and legal team and was placed in a different operational structure. The change in reporting hierarchy and restructuring constituted a "material demotion" and a "substantial reduction in authority" under the Plan, and thereby created a "good reason" under the Plan to warrant severance benefits if Plaintiff resigned.

10. At his annual performance review on February 12, 2019, Plaintiff and Nathan Goldman, Defendant's Chief Legal Officer, discussed whether severance might be available if Plaintiff were to depart the company. Mr. Goldman reacted unfavorably to the idea of severance and directed Plaintiff to make a claim under the Plan.

11. Plaintiff was eventually provided a copy of the Plan document. Plaintiff informed Mr. Goldman that he would be eligible for severance benefits under than Plan if he were to depart

the company because "good reason" existed based on the changes to his position and changes within CSX that resulted in a "material demotion" and a "substantial reduction in authority," as those terms are defined under the Plan. Although they discussed Plaintiff's eligibility for such benefits in the event he departed Defendant's employment, Plaintiff never terminated his employment and never submitted any written notice of "Good Reason" under the severance plan.

12. At a follow-up meeting on February 15, 2019, Mr. Goldman and Diana Sorfleet, Defendant's Chief Administrative Officer, informed Plaintiff that any potential claim for benefits under the Plan would be denied, declared that Plaintiff had "effectively resigned," and directed Plaintiff to leave Defendant's premises under escort the following work day.

13. Defendant therefore involuntarily terminated Plaintiff on February 15, 2019 other than for cause, entitling the Plaintiff to benefits under the Plan.

14. Plaintiff appealed Defendant's decision to deny him benefits under the Plan on February 22, 2019. His appeal was denied on July 16, 2019. A follow-up letter from Plaintiff requesting reconsideration of Defendant's decision was denied on October 22, 2019.

15. Defendant operates under a conflict of interest paying claims having both issued the policy which funds the plan and deciding whether to pay claims from the policy. Additionally, the Plan's claims administrator is a fact witness regarding a material issue, causing a further conflict of interest.

16. Any claims paid under the Plan are paid from Defendant's general funds.

17. Plaintiff has exhausted all appeals under the Plan.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and provide recovery of all benefits due to Plaintiff under the terms of the Plan pursuant to 29 U.S.C. § 1132 (a)(1)(B) with prejudgment interest; a full accounting of all

money and other benefits that are due to Plaintiff as a result of his involuntary termination by Defendant; attorneys' fees and costs to the full extent permitted by 29 U.S.C. §1132 (g)(1); and any and all other further relief this Court deems just and proper.

Respectfully submitted this 11th day of May, 2020.

        **DELEGAL & POINDEXTER, P.A.**

/s/ T.A. "Tad" Delegal, III
**T.A. DELEGAL, III, B.C.S.**
Fla. Bar No.: 892701
Email: tad@delegal.net
Secondary email: office@delegal.net
**JAMES C. POINDEXTER**
Fla. Bar No.: 0116039
Email: james@delegal.net
**ALEXANDRA E. STAFFORD**
Fla. Bar No.: 1018209
Email: alex@delegal.net
424 E. Monroe Street
Jacksonville, Florida 32202
Telephone: (904) 633-5000
Facsimile: (904) 358-2850
Counsel for Plaintiff